27600. DAVIES et al. v. CURRY et al.

SUBMITTED DECEMBER 11, 1972 — DECIDED FEBRUARY 22, 1973.

*Durden & Durden, Adie N. Durden, Jr.,* for appellants.

*Smith, Gardner, Wiggins, Geer & Brimberry, Peter Zack Geer,* for appellees.

MOBLEY, Chief Justice. Dorothy T. Davies, John W. Purvis, and Fannie J. Purvis brought this action against R. H. Curry, Jr., and Mrs. Maurice Gibbs Curry, seeking a temporary and permanent injunction against their violating a restrictive covenant prohibiting property in a subdivision from being used for other than residential purposes. The trial court, after hearing evidence, denied the temporary injunction sought. The appeal is from that judgment. Enumerated as error is the refusal to grant a temporary injunction and the dissolving of the temporary restraining order.

Mrs. Davies and Mr. and Mrs. Purvis own lots in the subdivision, as does Mrs. Curry. The subdivision restrictions provide that no lot shall be used except for residential purposes, nor shall any lot or part thereof ever be used for trade or business of any kind. It is undisputed that Mr. and Mrs. Curry moved out of their residence and remodeled it inside for use as a beauty parlor.

Mr. and Mrs. Curry contend that injunction should not be granted because the plaintiffs allowed the remodeling to be practically finished and large expenditures to be made without voicing any objection to it.

The trial judge was authorized to find from the evidence the following: Mr. and Mrs. Curry made application for the rezoning of the property from residential to commercial in October, 1971. Notice of the application was published in the local paper, and the rezoning was granted. They moved out of the residence and began remodeling it for use as a beauty parlor the latter part of June, 1972. The injunction action was filed July 31, 1972. Mrs. Curry personally told Mrs. Davies that the property would be used for commercial purposes prior to the commencement of the structural changes. The defendants expended between $12,000 and $15,000 in

remodeling the building prior to the service of the injunctive complaint on them, and the work was 97 to 98% complete at that time. Mrs. Curry sold the beauty parlor she was operating on the day before she was to move into the remodeled building, and had no place to operate her business when the plaintiffs filed their action for injunction. None of the plaintiffs had notified the defendants that they objected to the conversion of their residence into a beauty parlor until the injunctive action was filed.

It is contended by the plaintiffs that the rezoning of the property from residential to commercial use could not nullify the restrictive covenants. We agree with this contention. The only effect of the zoning on the covenants would be to limit the restrictions to a period of 20 years. Code Ann. § 29-301 (Ga. L. 1935, p. 112; Ga. L. 1962, p. 540); *McKinnon v. Neugent,* 225 Ga. 215 (167 SE2d 593).

The introduction of the evidence concerning the rezoning of the property served only to show that the plaintiffs had constructive notice of the intention of the defendants to convert their property to a business use.

It is well established by numerous decisions of this court that the extraordinary equitable relief of injunction will be denied a party where, with full knowledge of his rights, he has been guilty of delay in asserting them, and has allowed large expenditures to be made by another party on whom great injury would be inflicted by the grant of the injunction. *Holt v. Parsons,* 118 Ga. 895 (1) (45 SE 690); *City of Elberton v. Pearle Cotton Mills,* 123 Ga. 1, 3 (50 SE 977); *Head v. Crouch,* 207 Ga. 648 (63 SE2d 647); *Black v. Barnes,* 215 Ga. 827, 828 (114 SE2d 38); *Goodwin v. First Baptist Church,* 225 Ga. 448, 451 (169 SE2d 334).

The plaintiffs cite *Voyles v. Knight,* 220 Ga. 305, 306 (138 SE2d 565), to support their contention that the breach of a restrictive covenant against the "use" of property for a business purpose is accomplished when the

building ceases to be a residence and is used for business purposes. That case dealt entirely with the meaning of the restrictive covenant, and no question of an equitable estoppel was involved.

The plaintiffs also cite *Taylor v. Smith,* 221 Ga. 55 (142 SE2d 918), and state that in that case the defendants had already remodeled their building and were using it as a beauty shop. The statement of facts in the *Taylor* case shows that the case was heard on the pleadings and a stipulation of facts which raised only one issue, whether the restrictive covenant prohibited the use of the defendants' property for beauty shop purposes.

The case of *Burton v. East Point Motors,* 209 Ga. 872 (76 SE2d 700), is similar to the present case. An injunction was sought against the use of property as an automobile sales and service business, contrary to the restriction in a subdivision that the lots "shall not be used otherwise than for residential purposes." The building was almost completed before an injunction was sought, and it was held by this court that the plaintiffs had forfeited their right to injunction by their delay in bringing the action until the defendants had expended large sums of money in constructing their building. There had been no "use" of the building at the time the injunctive action was brought.

We do not understand the plaintiffs to contend that the cause of action for injunctive relief does not accrue until the "use" of the building for business purposes is complete, for in that event their petition for injunction would be premature, since the defendants had not begun the operation of their business.

The granting or denial of interlocutory injunctions rests in the sound discretion of the trial judge according to the circumstances of each case. Code § 55-108.

"In an application for an interlocutory injunction there should be a balancing of conveniences and a consideration of whether greater harm might be done by

refusing than by granting the injunction. *Everett v. Tabor,* 119 Ga. 128 (4) (46 SE 72); *Jones v. Lanier Development Co.,* 188 Ga. 141 (2 SE2d 923); *Ballard v. Waites,* 194 Ga. 427, 429 (3) (21 SE2d 848)." *Maddox v. Willis,* 205 Ga. 596 (5) (54 SE2d 632).

Under the evidence at the interlocutory hearing the trial judge was authorized to find that the plaintiffs were aware of the structural changes which the defendants were making to convert their residence into a business use, and that they were guilty of laches in voicing no objection to such use, and allowing the defendants to expend large sums of money, before filing their application for injunction. It was not error, therefore, to deny the interlocutory injunction.

*Judgment affirmed. All the Justices concur, except Nichols, Hawes and Gunter, JJ., who dissent.*

GUNTER, Justice, dissenting. I disagree with the majority in this case, for I am of the opinion that the trial judge abused his discretion in failing to enter a temporary injunction in favor of the appellants.

The record in this case shows that the subdivision lots owned by the parties to this case were subject to recorded restrictive covenants which provided: "No lot shall be used except for residential purposes, nor shall said lot nor any part thereof ever be used or occupied for trade or business of any kind whatsoever, . . . "

The recorded restrictive covenants further provided as follows: "Enforcement shall be by proceedings at law or in equity by Northside Packing Company, Inc., its successors or assigns, or any person owning a lot in said subdivision which is subject to the same restrictions or conditions in respect to which the default is made, against any persons violating or attempting to violate any covenant either to restrain violation or to recover damages."

The record shows that R. H. Curry, Jr., made an application for a building permit to the City of Albany on

June 29, 1972, to "remodel house and make beauty shop" for a total construction cost of two thousand ($2,000) dollars. The record does not disclose when or if this building permit was granted by the City of Albany. Mr. Curry testified that the remodeling work was started a few days before they moved out of the house on July 3.

Mr. Purvis, one of the appellants, testified that when he learned the appellees' property was being converted for commercial purposes that he talked with Mr. Owens, the real estate agent who had been connected with the subdivision since its inception, about stopping the conversion. His testimony was: "I talked with him (Mr. Owens) a half a dozen times or more and he was supposed to have handled this thing and he didn't do anything." According to the record the conversations with Mr. Owens would have had to have taken place sometime between June 29, 1972 and July 31, 1972, the day the complaint for injunction was filed in court.

Mrs. Davies, one of the appellants, testified that she thought Mr. Owens, the real estate agent connected with the subdivision, was doing something about stopping the conversion of the house to a commercial use. She testified that she thought that Mr. Owens was handling it and doing something about it—"He had led us to believe that he had a lawyer that was checking into it."

The record then shows that the appellants employed a lawyer, that the complaint was verified on July 28, 1972, and that the complaint was filed on July 31, 1972, seeking to enjoin the violation of the recorded restrictive covenant.

It is therefore very clear to me from this record that the remodeling permit was only applied for on June 29, 1972, and the action for injunction to stop the violation was filed on July 31, 1972. Under such circumstances the appellants were not dilatory in their efforts and, in my opinion, were not guilty of laches so as to prevent equitable relief by injunction to enforce a restrictive

covenant limiting the use of a subdivision lot.

By virtue of the chronology of events leading to the prompt action of the appellants in bringing their complaint for injunction, I am of the opinion that the trial judge abused his discretion in refusing a temporary injunction. To my mind the evidence demanded that relief in favor of appellants.

I would reverse the judgment.

I respectfully dissent.