45536. McCLURE et al. v. DAVIDSON et al.

(373 SE2d 617)

BELL, Justice.

This appeal is from a trial court's ruling invalidating the rezoning of the appellants' property by the Walton County Board of Commissioners. The appeal involves, inter alia, the issues of the standing of neighboring property owners to challenge the rezoning of the subject property, the applicability of the doctrines of laches and vested rights in the zoning context, and the applicability of the Zoning Procedures Act, OCGA § 36-66-1 to § 36-66-5. We affirm the trial court's ruling.

Appellant C. A. McClure, a principal of appellant Broadcast Properties, Inc., wishes to construct a 1,000-foot, 100,000-watt FM radio transmission tower on the subject property, located in Walton County. The appellees are neighboring landowners. Before December 17, 1985, when it was amended, the Walton County Comprehensive Land Development Ordinance (hereinafter Land Development Ordinance) had no zoning designation authorizing construction of radio towers. Once amended, the Land Development Ordinance accommodated radio towers in a B-1 designation. The appellants obtained an option to purchase a 127-acre tract of land in unincorporated Walton County, contingent upon the land receiving rezoning from A-1 to B-1. An application requesting the rezoning of a 50-acre portion of the tract was rejected. The appellants then sought rezoning of the 20-acre tract that is the subject of this suit. This tract of land was subject to restrictive covenants on two lots, restricting the lots to single-family use.

The Walton County Planning Commission held a hearing on this request on April 20, 1987. The Planning Commission recommended denial of the rezoning request.

The next day, April 21, the Walton County Board of Commissioners held a hearing on the rezoning. The board of commissioners did not publish any notice of this hearing, and were not required to do so under the Land Development Ordinance. All the appellees were present at the hearing but J. W. Henderson. The attorney for the appellees was present at the hearing and objected to the lack of notice. That same day, the board of commissioners approved the rezoning proposal and the appellants obtained a building permit.

On May 18, 1987, the Davidsons (two of the appellees) filed an appeal to the Walton County Board of Adjustment. They appealed to the board of adjustment because Table 16.1 of the Land Development Ordinance directs parties aggrieved by a zoning decision of the board of commissioners to appeal to the board of adjustment first, and then to superior court if they lose before the board of adjustment. On July 7, 1987, the Davidsons' appeal came on for a hearing before the board of adjustment. The board decided that it did not have jurisdiction to

overturn a decision of the board of commissioners. The board therefore dismissed the Davidsons' appeal.

On July 21, 1987, the appellants exercised their option to purchase the 127-acre tract. On August 3, 1987, the appellees filed suit in the Walton Superior Court, seeking a declaratory judgment and injunction. The appellees, inter alia, contended that the notice requirement of OCGA § 36-66-4 (a), a provision of the Zoning Procedures Act, applied to the hearing of the board of commissioners. They contended that the board of commissioners did not comply with that notice requirement, and on that ground they sought a declaration that the April 21 rezoning was void. The appellees also sought an injunction prohibiting the appellants from developing the property in accordance with the B-1 rezoning.

The trial court held that the rezoning was void for several reasons. The primary reason was that the Land Development Ordinance as applied to this case was illegal because it did not meet the notice requirements of OCGA § 36-66-4 (a). The court further held that the issuance of any building permit was illegal, and that therefore the appellants had acquired no vested rights. The court enjoined the appellants from doing any construction on the land in question.

1. The appellants first argue that the appellees lack standing to challenge the rezoning. We disagree. The appellees offered testimony that the property of the appellees would suffer a reduction in value of between 20% to 50% because of the rezoning. This evidence is sufficient to establish standing. *Brand v. Wilson*, 252 Ga. 416, 417 (1) (314 SE2d 192) (1984); *DeKalb County v. Wapensky*, 253 Ga. 47 (1) (315 SE2d 873) (1984).

2. In their second enumeration of error the appellants contend that the trial court erred in failing to rule that laches barred the appellees' challenge to the rezoning. The appellants point out that the appellees delayed taking an appeal to superior court from the board of commissioners' April 21 rezoning until August 3. Relying on footnote 4 in the case of *Village Centers v. DeKalb County*, 248 Ga. 177, 179 (3) (281 SE2d 522) (1981), the appellees contend that this court has contemplated that laches can arise in fewer than 30 days with regard to an appeal by a party opposing rezoning.[1] The appellants argue that the appellees' near three-month delay in proceeding to su-

---

[1] In *Village Centers*, supra, 248 Ga. at 179-180, we held any suit in equity attacking the denial of a rezoning must be filed in superior court within 30 days of the denial. Here, we deal with the grant of a rezoning petition. In this regard, footnote 4 of *Village Centers*, id., at 180, noted:

[w]e do not decide whether any party opposing rezoning would have 30 days in which to file suit alleging that the grant of an application for rezoning was invalid because laches might raise an earlier bar. See *Whipkey v. Turner*, 206 Ga. 410 (57 SE2d 481) (1950).

perior court constitutes laches. The appellants acknowledge that the appellees appealed to the board of adjustment within 30 days of the April 21 rezoning. However, they argue that the appellees should have been aware that the board of adjustment did not have jurisdiction to hear their appeal, in that the board of adjustment is merely an administrative body that cannot review a decision of the county's highest legislative body — the board of commissioners.

In determining what constitutes laches, each case must be determined according to its particular circumstances. *Yablon v. Metropolitan Life Ins. Co.*, 200 Ga. 693 (38 SE2d 534) (1946). Additionally, the question of laches is addressed to the sound discretion of the trial court, and on appeal the exercise of that discretion will not be disturbed unless "it is so clearly wrong as to amount to an abuse of discretion. *Mountain Manor Co. v. Greenoe*, 205 Ga. 619, 621 (54 SE2d 629)." *Cohen v. Glass*, 225 Ga. 646, 647 (171 SE2d 118) (1969).

We have held that " '[a] party is not entitled to an injunction when, *with full knowledge of his rights*, he has been guilty of delay and laches in asserting them.' " *Black v. Barnes*, 215 Ga. 827, 829 (1) (114 SE2d 38) (1960). (Emphasis supplied.) We have also noted that a factor in determining laches is the " 'sufficiency of the excuse offered in [extenuation of the delay].' " *Chapman v. McClelland*, 248 Ga. 725, 727 (5) (286 SE2d 290) (1982).

Here, the trial court, in ruling against the appellants' laches defense, found that:

> they [the appellees] did not waive notice but through counsel specifically pointed out the deficiencies in the zoning procedures in sufficient time for the defects and such notice and procedures to have been corrected. The [appellees] followed, to the best of their understanding, the procedures set forth in the [Land Development Ordinance].

Table 16.1 of the Land Development Ordinance does indeed direct that losing parties before the board of commissioners appeal to the board of adjustment. The evidence before the trial court also showed that this provision had never been challenged in court. Given these factors, even assuming that the ordinance gave too much power to the board of adjustment, we cannot conclude that the appellees should have simply ignored the existing ordinance and taken a chance on proceeding to superior court. The appellees could have, perhaps, taken simultaneous appeals to the board of adjustment and to superior court; but in any event, these alternatives highlight the uncertainty in this case regarding the proper avenue of appeal. Because of this uncertainty, the case of *Village Centers*, supra, 248 Ga., is inapposite; there we dealt with a case in which the proper appeal avenue

— to superior court — was clear. The time after which the appellees' appeal to superior court should be barred must be determined under the specific facts of this case. See *Yablon*, supra, 200 Ga.

Moreover, having examined the facts of this case, we find that the record supports the trial court's finding that the appellees followed the procedures to the best of their understanding. We thus cannot say that the appellees acted with full knowledge of their rights or without a satisfactory excuse in proceeding first to the board of adjustment. See *Black*, supra, 215 Ga. at 829. Additionally, the appellants went forward with their plans for the transmission tower, despite knowing that the appellees contested notice and despite knowing that a valid dispute existed concerning the proper avenue for the appellees' appeal of the board of commissioners' decision. This factor militates against the appellants on the equitable claim of laches.

Having reviewed the record, we conclude that the trial court did not abuse its discretion in ruling that the appellees' suit was not barred by laches.

3. The appellants contend in their third enumeration that the trial court erred in holding that the rezoning was a nullity because the county ordinance did not comply with OCGA § 36-66-4 (a), a provision of the "The Zoning Procedures Law," § 36-66-1 through § 36-66-5. Appellants contend that the requirements of § 36-66-1 through § 36-66-5 are merely directory, with compliance therewith creating a presumption that the county has complied with due process in exercising its zoning authority. We disagree.

Section 36-66-2 (a) provides as follows:

> While recognizing and confirming the authority of local governments to exercise zoning power . . . it is the intention of this chapter to establish as state policy minimum procedures governing the exercise of that power. The purpose of these minimum procedures is to assure that due process is afforded to the general public when local governments regulate the uses of property through the exercise of the zoning power. Nothing in this chapter shall be construed to invalidate any zoning decision made by a local government prior to January 1, 1986, or to require a local government to exercise its zoning power.

Moreover, § 36-66-4 (a) provides that:

> A local government taking action resulting in a zoning decision shall provide for a hearing on the proposed action. At least 15 but not more than 45 days prior to the date of the

hearing, the local government *shall* cause to be published within a newspaper of general circulation . . . a notice of the hearing. [Emphasis supplied.]

The legislature has clearly stated its intention in enacting the Zoning Procedures Law — to establish *minimum* procedures to assure that due process is afforded those affected by the exercise of the zoning power of a local government. By using the word "minimum," the legislature makes the procedures set forth in the Zoning Procedures Law mandatory. The General Assembly did not state that the procedures were to be used as guidelines by local governments; instead the legislature stated that local governments can do no less than that set forth in the chapter. Moreover, in creating the procedures in § 36-66-4 (a), the legislature states that the local governments "shall" follow the procedures. As shall is a word of command, it can hardly be argued that the procedures are optional. Finally, the legislature has stated that the procedures of the chapter shall not be construed to invalidate any zoning decision made before January 1, 1986. A fortiori, the General Assembly intended non-compliance with the procedures to invalidate any zoning decision after that date. This court can only construe procedural requirements as mandatory when the General Assembly has stated its intent that noncompliance with the requirements will invalidate any zoning decisions.

We therefore conclude that the trial court properly ruled that the county's failure to comply with OCGA § 36-66-4 (a) invalidates the subject zoning action.

4. The appellants next argue that even if the requirements of § 36-66-4 (a) are mandatory, the failure of notice is not a ground for invalidating the zoning decision. They argue that the appellees waived any right to notice and any right to complain of defective notice by appearing at the hearings for which they claim they received defective notice. However, we think that, even assuming that appearance at the hearings would cure any defect in the notice, the appellants' argument must fail because at least one of the appellees did not receive notice and therefore did not attend the hearings. See *Save the Bay Committee v. City of Savannah*, 227 Ga. 436, 448 (4) (181 SE2d 351) (1971).

5. The appellants next argue that the trial court erred in enjoining the use of the 20 acres because two lots of the 20 acres were subject to restrictive covenants. The appellants argue that the court could only enjoin the use of those two lots. Although the trial court's order is unclear on the effect of the two restrictive covenants, we need not resolve this dispute, because the court's injunction based on inadequate notice, which we have affirmed, applies to the entire 20 acres.

6. The appellants also argue that, through the issuance of the

building permit and the expenditure of funds, they acquired a vested right to develop the property in accordance with the B-1 rezoning. We disagree.

The issuance of a building permit results in a vested right only when the "permit has been legally obtained and is valid in every respect," *Keenan v. Acker*, 226 Ga. 896 (178 SE2d 196) (1970), and has been "validly issued." *Barker v. County of Forsyth*, 248 Ga. 73, 75 (281 SE2d 549) (1981).

*Matheson v. DeKalb County*, 257 Ga. 48, 49 (3) (354 SE2d 121) (1987). Here, the issuance of the permit was dependent upon the rezoning. As the rezoning is invalid, the permit is tainted, and did not vest any right in the appellants.

*Judgment affirmed. All the Justices concur, except Smith, J., who dissents.*

DECIDED NOVEMBER 23, 1988.

*Fortson, Bentley & Griffin, J. Edward Allen, Jr., John E. Griffin, Ernest Depascale, Jr., William Lee Preston,* for appellants.
*Dillard, Greer, Westmoreland & Wilson, George P. Dillard, George J. Hearn III,* for appellees.